David P. McManus, Cedar Rapids, Iowa, for plaintiffs.

James R. Snyder, Cedar Rapids, Iowa, for defendants Ralph Schulte, Jane Schulte and Robert Schulte.

Paul C. Lillios, Asst. U.S. Atty., Cedar Rapids, Iowa, for defendant U.S.

**Judith SOLECKI and Wayne Solecki, Plaintiffs,**

v.

**UNITED STATES of America, Ralph Schulte, Jane Schulte, and Robert Schulte, Defendants.**

No. C 86–0097.

United States District Court, N.D. Iowa, Cedar Rapids Division.

June 12, 1988.

## ORDER

HANSEN, District Judge.

This matter is before the court on plaintiffs' resisted motion in limine, filed December 2, 1987, and defendant United States of America's resisted motion for summary judgment, filed January 15, 1988. The parties have briefed the issues before the court. The court, having read the briefs submitted by the parties, enters the following order.

Plaintiffs, by their motion in limine, seek to preclude testimony to the effect that the injuries complained of in this action which were incurred by Judith Solecki were in fact inflicted by Wayne Solecki. Plaintiffs assert that such testimony would be hearsay, and would be unduly prejudicial to the plaintiffs. In resistance to plaintiffs' mo-

tion in limine, the government asserts that the motion is not applicable to the United States of America since plaintiffs have no right to a jury trial against the United States under 28 U.S.C. § 2402. Under that section, any claims brought against the United States pursuant to the Federal Tort Claims Act are to be tried by the court without a jury. *See* 28 U.S.C. §§ 1346(b), 2402. In addition, the government argues that plaintiffs' motion must fail on the merits. The court finds that plaintiffs' motion in limine should be denied. It is presumed that trial judges will rely on properly admitted and relevant evidence in rendering their decisions. *Moorhead v. Mitsubishi Air Craft Int'l, Inc.*, 828 F.2d 278, 287 (5th Cir.1987).

The United States has moved for summary judgment in this matter. In support of its motion, the United States argues that it had no duty to maintain the premises on which the plaintiff was allegedly injured. In further support of its motion, the United States has submitted a statement of facts as to which it contends there are no genuine issues of material fact to be tried. That statement of facts is uncontroverted by the plaintiffs in this matter. Under Local Rule 2.2.7, the facts contained in the government's statement of facts, which are uncontroverted by the plaintiffs, are deemed admitted. The facts established by the procedure set out in the Local Rules are as follows:

1. The United States of America, through the Farmers Home Administration (hereinafter FmHA) entered into a loan agreement with Ralph J. Schulte, whereby FmHA made a rural rental housing loan to Ralph J. Schulte pursuant to Title V of the Housing Act of 1949 (42 U.S.C. § 1471, *et seq.*). Exhibit 1.

2. As part of the loan transaction, Ralph J. and Jane Ann Schulte (hereinafter the Schultes) executed and delivered to FmHA their promissory note, wherein they promised to repay FmHA the principal sum of $52,500, with interest at eight percent per annum. This promissory note was dated November 7, 1977. Exhibit 2.

3. To secure the promissory note, the Schultes executed and delivered a real estate mortgage upon real property situated in Benton County, Iowa; said real property commonly known as the Schulte Apartments, located in Norway, Iowa. The mortgage was recorded November 23, 1977. In addition, the loan agreement dated December 22, 1975, (Exhibit 1) was incorporated by reference into the mortgage. Exhibit 3.

4. During the life of this rural rental housing loan, FmHA conducted on-site inspections and evaluations of the subject real property, in accordance with program requirements and FmHA regulations. These servicing functions were for, *inter alia*, the purpose of protecting the interests of FmHA and maintaining the security property. 7 C.F.R. § 1965.51. Further, all maintenance of the real property was the responsibility of the Schultes, the borrowers in this transaction. 7 C.F.R. § 1965.61(c). Exhibit 4.

5. In several inspection reports given to the Schultes or their agents, the front stoop or stairs were identified by FmHA as areas in need of correction or repair. Exhibit 4.

6. During the course of this rural rental housing loan, the Schultes became delinquent in their loan repayments to the Farmers Home Administration. Exhibit 5, Exhibit 13.

7. In or about September or October, 1984, the Schultes left the State of Iowa and established residence in the State of Arizona. After their move to Arizona, the Schultes did not personally perform any further maintenance upon the property. Exhibit 6.

8. On or about October 16, 1984, FmHA served upon the Schultes "Notice of Acceleration of Your Debt to the Farmers Home Administration, Demand for Payment of that Debt, and Notice of Your Opportunity to Have a Hearing Concerning This Action." Exhibit 7.

9. Following the departure of the Schultes, Robert Schulte, brother of Ralph Schulte, assumed responsibility for managing the Schulte Apartments and perform-

ing maintenance. From approximately October, 1984, to July, 1985, Robert Schulte made various repairs upon the property, received money from tenants and rented out apartment units, as an agent, manager or caretaker for the Schultes. In July, 1985, Robert Schulte moved to the State of Arizona. Exhibit 8, Exhibit 10, Exhibit 20.

10. On or about May 14, 1985, FmHA completed preliminary matters prepatory for foreclosure. The FmHA State Office, in Des Moines, Iowa, was informed by the FmHA District Director that it appeared FmHA was ready to proceed with foreclosure. Exhibit 9.

11. At the end of May, 1985, or the beginning of June, 1985, plaintiffs Judith and Wayne Solecki rented an apartment at the Schulte Apartments from Robert Schulte. Robert Schulte ultimately asked Judith and Wayne Solecki to vacate the apartment in July, 1985. Exhibit 10.

12. Plaintiff Judith Solecki alleges that while she was moving into the Schulte Apartments, on or about June 3, 1985, she tripped and fell on the outside stairs leading to the front door of the Schulte Apartments. Judith Solecki further alleges that she lost a kidney as a result of the alleged fall. Complaint, p. 2.

13. Following the alleged fall on the front steps by Judith Solecki, Robert Schulte repaired the steps in question. Exhibit 8.

14. Judith and Wayne Solecki have sued the Schultes, Robert Schulte and the United States of America for damages allegedly stemming from her alleged fall. The United States has denied the allegations. Complaint; Answer and Affirmative Defenses of United States of America.

15. On or about June 6, 1985, in connection with the foreclosure referral, the FmHA District Director requested from the FmHA State Office authorization to take possession of the Schulte Apartments until foreclosure was completed. Exhibit 11.

16. On July 11, 1985, the United States filed in this court a complaint for foreclosure of the Schulte Apartments and an application for appointment of a receiver. Exhibit 12.

17. On September 11, 1985, the United States renewed its request for appointment of receiver in this court to "insure that all rents and profits from the real estate are accounted for and that no waste occurs during the pendency of the mortgage foreclosure and the sale of the subject real estate." Exhibit 13.

18. On September 18, 1985, the court granted the application for appointment of a receiver and appointed the Farmers Home Administration to act as receiver. The receiver's oath was filed October 2, 1985. Exhibit 14, Exhibit 15.

19. Following the receivership appointment, FmHA took control of the property. During the course of the receivership, FmHA effected emergency repairs, hired contractors to work on the property, collected rent, established bank accounts, paid necessary bills, obtained competent management, insured the property, received and acted upon tenant complaints, and eventually sold the apartments. All of the above acts took place only after FmHA was appointed receiver. Exhibit 16.

20. The relationship between the Schultes and FmHA was that of borrower and lender within a governmental lending program. At no time during the pendency of this matter, nor at any other time, did the Schultes or Robert Schulte act as agents, employees or independent contractors of the United States of America. Exhibit 16.

21. The United States obtained a judgment and decree of foreclosure on the Schulte Apartments on December 30, 1985. The property was sold to the United States at the marshal's sale and the court confirmed the marshal's sale on March 27, 1986. On July 28, 1986, the court approved the receiver's final report and released the receiver from further obligation. Exhibit 17, Exhibit 18, Exhibit 19.

The exhibits referred to in the statement of facts are attached to the government's statement of facts, filed January 15, 1988, docket number 45.

## CONCLUSIONS OF LAW

Plaintiffs' claims against the government rest on their assertion that the FmHA had sufficient ownership or control of the apartments at the time that Judith Solecki fell on the apartment stairs to hold it liable for that accident. In view of the facts deemed admitted, the issue presented for decision is whether the federal government, as a lender of money to the Schultes, could be held liable for the damages caused by the alleged negligence of the Schultes in the maintenance of the apartment stairs.

The plaintiffs bring their suit under the Federal Tort Claims Act. Under the Act, the federal government is liable to the same extent as private parties for torts committed by federal employees acting within the scope of their employment. As stated by the Supreme Court in *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976),

> The Tort Claims Act was never intended, and has not been construed by this Court, to reach employees or agents of all federally funded programs that confer benefits on people. The language of 28 U.S.C. § 1346(b) is unambiguous, covering injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." The Act defines Government employees to include officers and employees of "any federal agency" but excludes "any contractor with the United States." 28 U.S.C. § 2671.

*Id.* at 813–14, 96 S.Ct. at 1975 (footnotes omitted). Title 28, U.S.C. § 1346(b) provides:

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The facts deemed admitted in this matter establish that, at the time of the alleged injury, the United States, through the FmHA, was a mortgagee of the premises on which plaintiff was injured. The court finds that the FmHA's status as mortgagee is an insufficient basis for plaintiffs' claim under the Federal Tort Claims Act. No evidence has been submitted to show that the government was either directly or indirectly involved in the day-to-day operations of the Schulte Apartments. The only evidence submitted on this point by the plaintiffs is contained in their complaint, in which plaintiffs state:

> Sometime before May, 1985, ownership and/or control of the Schulte Apartments was transferred, in whole or in part, to the Farmers Home Administration (FmHA), an administrative agency of the United States of America, presumably because FmHA had a mortgage on the above premises and default had occurred in payment.

Plaintiffs' complaint, ¶ 5. However, the facts deemed admitted establish that the United States did not own or control the property in May, 1985. Rather, the United States filed its mortgage foreclosure action on July 11, 1985; the FmHA was appointed receiver on September 18, 1985; the judgment and decree of foreclosure was filed on December 30, 1985; the marshal's sale of the property to the United States was confirmed on March 27, 1986; and the receiver was discharged on July 28, 1986. Plaintiffs' accident took place on June 3, 1985, before the United States' mortgage foreclosure action.

A similar issue was addressed in *Wright v. United States*, 599 F.2d 304 (9th Cir. 1979). In *Wright*, the court framed the issue as follows:

> The issue before us is whether the federal government, as a lender of money to

the Sleeping Buffalo Recreation Association, through one of its federal lending agencies, could be liable for the damages caused by the negligence of the borrowing corporation in the management of its swimming pool. The answer is no. *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Perez v. United States,* 594 F.2d 280 (1st Cir.1979).

*Id.* at 305. Here, the facts are slightly different since the FmHA was the mortgagee of the property on which plaintiff Judith Solecki was allegedly injured. However, the court finds that the *Wright* case and the cases cited therein are so similar as to be controlling in this case, despite plaintiffs' argument that by lending money directly to the Schultes instead of to a local agency, the FmHA "descended into the operational or day-to-day activities" concerning the apartments. Plaintiffs' supplemental memorandum, filed February 22, 1988. This case is also similar to *Currington v. Black Hawk County,* 184 N.W.2d 675 (Iowa 1971), in which the plaintiffs sued the holder of a tax sales certificate for injuries he received upon the property between the date a deed could have been obtained by the county and the date that the deed was obtained. The court noted that the purchaser at a tax sale obtains no title or right of possession of the property before the deed issues. *Id.* at 676. The court concluded:

> Since defendant had only an inchoate interest in the property, neither holding title nor having the right to possession at the time plaintiff was injured, we should not require it to maintain the property in a safe condition or hold it responsible for injuries occurring thereon.

*Id.* Similarly, the FmHA, at the time of plaintiff's accident, had merely an inchoate interest in the property on which she was allegedly injured. At that time, the FmHA did not hold title to the property. Only later, after plaintiff's fall, did the FmHA institute foreclosure proceedings. Therefore, the FmHA should not be held liable for plaintiff's injuries.

Plaintiffs also allege that Robert Schulte, the brother of Ralph Schulte, acted on behalf of the FmHA in managing and maintaining the Schulte apartments after about September or October of 1984. This theory of recovery against the United States is disposed of by the fact deemed admitted that "at no time during the pendency of this matter, nor at any other time, did the Schultes or Robert Schulte act as agents, employees, or independent contractors of the United States of America."

The facts deemed admitted, when viewed in the light most favorable to the plaintiffs, establish that the defendant United States of America did not own or control the Schulte Apartments until after the plaintiff's accident. Since the government had no duty to maintain the stairs upon which plaintiff Judith Solecki was injured until after her accident, and since the acting manager of the apartments at the time of plaintiff's injury was not acting on behalf of the United States, the government's motion for summary judgment shall be granted.

### ORDER:

Accordingly, It Is Ordered:

1. Plaintiffs' motion in limine, filed December 2, 1987, is denied.

2. Defendant United States of America's motion for summary judgment, filed January 15, 1988, is granted.